IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

EDWARD SCOTT and DEBBIE           )
RICHARDS,                          )
                                   )   CIVIL ACTION FILE NO.
        Plaintiffs,                )        5:19-cv-22-LGW-BWC
                                   )
v.                                 )
                                   )   For Violations of the Fair Labor
NORTH AMERICAN INNS, LLC,          )   Standards Act of 1938, As Amended
SHARMA HOSPITALITY, LLC,           )
and SHAUN B. SHARMA,               )
                                   )
        Defendants.                )

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT**

COME NOW the Plaintiffs, Edward Scott ("Scott") and Debbie Richards

("Richards")(collectively "Plaintiffs"), and hereby respond to Defendants North

American Inns, LLC ("NAI") and Shaun Sharma (collectively, "Defendants")[1]

motions for summary judgment [docs. 05[2] and 10] as follows:

I.     INTRODUCTION AND BACKGROUND

This case involves defendants who take advantage of indigent individuals by

promising them a residence and $50 per week in exchange for over sixty hours of

_____

[1]Defendant Sharma Hospitality, LLC has not moved for summary judgment.
[2] Plaintiffs incorporate their response (doc. 07) to Defendants' first motion for
summary judgment (doc. 05) herein.

work per week (for an effective rate of 83 cents per hour).  Plaintiffs previously filed a lawsuit in this Court seeking unpaid minimum wage and overtime compensation.  The parties reached a Settlement Agreement on October 10, 2018 which Defendants knew, at the time it was negotiated, they had no reasonable expectation to pay.[3]  Defendants breached that agreement, the Court refused to set aside its dismissal of the initial case, and Plaintiffs filed the instant action.

After Defendants' "Motion to Dismiss or in the Alternative for Summary Judgment" [doc. 05] was converted into one for Summary Judgment by Order of this Court dated June 25, 2019 [doc. 08], instead of supplementing the record as instructed by the Court and allowed by Fed. R. Civ. P. 56 (*see* Doc. 8 at 4),

---

[3] This Court refused Plaintiff's request to set aside the dismissal of the initial case, finding that "While Plaintiffs suspect Defendants entered the settlement agreement with no intention of paying (due to the timing of the bankruptcy filing and the lack of notice of the impending bankruptcy to Plaintiffs), Plaintiffs admit that there is no evidence to prove their suspicions."  While Plaintiffs had no such evidence at the time of the Court's order (because no substantive discovery had been conducted in the initial case), Plaintiffs discovered the true intent of Defendants at the time they entered into the Settlement Agreement during the December 11, 2019, deposition of Paul Sharma in the instant action, who admits that he knew, at the time he entered into the Settlement Agreement and became the sole party responsible for payments thereunder, that it would have taken "a miracle" for him to make any of the payments to Plaintiffs set forth in the Settlement Agreement. (Paul Sharma Dep. [doc. 32-4] at 77:11-21  ("Q:  You had a negative net worth of $40,000 as of August 29th, 2018.  So I'm asking how did you think a month and a half later you would be able to pay anything, let alone take all of the brunt of the settlement agreement?  A:  Opportunity.  Opportunity.  You know, it's – do what I could do, I guess, and try to – Q:  What opportunities are you referring – what did you think was going to happen?  A:  I don't know.  **Almost a miracle, I guess**.")[emphasis added]).

Defendants substantially amended their motion (with the benefit of having reviewed Plaintiffs' response to Defendant's motion [doc. 07]) to include two grounds for summary judgment not contained, or even referenced, in their initial motion: (1) that Shaun Sharma and NAI should are not liable for breach of contract and (2) that Plaintiffs' claims are barred by the doctrine of res judicata. Despite Defendants' attempt to seek a "second bite at the [summary judgment] apple," and the difficulty Plaintiffs face in simultaneously replying to two summary judgment motions, Plaintiffs respond to Defendants' motions as follows:

## II.   PROCEDURAL POSTURE

On January 31, 2018, Plaintiffs filed a Complaint against Defendants alleging violations of the Fair Labor Standards Act of 1938. S.D.Ga. Civil Action No. 5:18-CV-00006-LGW-BWC (Doc. 1). The parties conducted a Court-assisted settlement conference on September 20, 2018. (Doc. 31) With the assistance of the Honorable Benjamin W. Cheesbro, Magistrate Judge for the Southern District of Georgia, the parties reached a settlement of the retaliation claims brought by Plaintiffs against Defendants. *Id.* Conditions precedent to Defendants settling the FLSA claim was for Plaintiffs to (1) agree to sign a separate General Release of all claims they may have, known or unknown, against Defendants Paul Sharma, Shaun Sharma, and NAI in exchange for $10 (*see* "Exhibit 1," hereto), (2) include a general release and confidentiality clauses in the FLSA Settlement Agreement

(*see* doc. 10-3 at 3, ¶ 5 and 5, ¶ 7), and (3) file the Settlement Agreement under seal (S.D.Ga. Civil Action No. 5:18-CV-00006-LGW-BWC (Doc. 38). *See* the initial term sheet from the September 20, 2018 mediation, attached hereto as "Exhibit 2." This Court approved the parties' FLSA settlement on December 7, 2018 and dismissed Plaintiff's claims without prejudice. Doc 10-7.

Pursuant to the plain language of the agreement, the first payment in the parties' structured settlement agreement was due no later than December 17, 2018. No payment was made, nor did Defendants communicate with Plaintiffs in any manner regarding Defendants' anticipated inability to pay prior to Plaintiffs' counsel informing Defendants, through counsel, of Defendants' breach after the breach had occurred. On December 18, 2018, Plaintiffs informed the Court of Defendants' breach. 5:18-CV-00006-LGW-BWC (Doc. 43).

On May 13, 2019, this Court denied Plaintiffs' motion for contempt and to set aside the settlement/dismissal, specifically finding that "[w]hile Plaintiffs suspect Defendants entered the settlement agreement with no intention of paying…, Plaintiffs admit that there is no evidence to prove their suspicions." 5:18-CV-00006-LGW-BWC (Doc. 48 at 3) (*see also, id.* at 5).[4]

---

[4] As described, *supra*, Defendant Paul Sharma has since testified that, at the time Defendants entered into the Settlement Agreement with Plaintiffs, it would have taken "a miracle" for Defendants to make any payments set forth therein.

Plaintiffs filed the instant action on March 13, 2019.  Doc. 1.  Defendants were served on May 7, 2019.  Instead of filing an Answer to Plaintiffs' Complaint, on May 24, 2019, Defendants filed a Motion to Dismiss or in the Alternative for Summary Judgment.  Doc. 5.  Plaintiffs responded to Defendants' motion on June 7, 2019.  Doc 7.  This Court converted Defendants' Motion to Dismiss into a Motion for Summary Judgment on June 25, 2019, and provided 21 days therefrom for Defendants "to file any supplemental evidence and briefing."  Doc. 8 at 4. Defendants then filed another Motion for Summary Judgment on July 16, 2019[5], to which Plaintiffs now respond.

### III.   LEGAL STANDARD

Plaintiffs incorporate the summary judgment standard set forth in their response to Defendants' initial motion for summary judgment.  Doc. 7 at 4-5.

### IV.   STATEMENT OF FACTS

Plaintiffs incorporate herein their Counterstatement of Facts from their response to Defendants' first motion for summary judgment herein.  Doc. 7-1.

Plaintiffs attach hereto, as "Exhibit 3," a Response to the Statement of Facts filed with Defendants' second motion for summary judgment (doc. 11).

### V.   ARGUMENT

---

[5] Following the Court's denial of Defendant's Motion to Dismiss (by converting it into a motion for summary judgment), Defendants were required to file an Answer to Plaintiffs' Complaint no later than July 30, 2019, per Fed. R. Civ. P. 12(A)(4). Defendants have not filed an Answer to Plaintiffs' Complaint.

**Shaun Sharma and North American Inns, LLC[6] are liable for breach of contract due to Defendants' breach of the Settlement Agreement**

Defendants Shaun Sharma, North American Inns, LLC and Paul Sharma, all of whom signed the Settlement Agreement[7], all breached that agreement when Paul Sharma, who was designated as the sole individual responsible for paying Plaintiffs, failed to make the agreement's first installment payment.  Defendants now claim that, although they breached the Settlement Agreement by not making any payments, Plaintiffs should nonetheless be bound by the restrictions imposed upon them by the terms of the Settlement Agreement.  It is a long-established legal tenet that the breach of a contract by one party relieves the non-breaching party from its obligations under that contract.[8]  The moment Defendants failed to pay the first installment payment, regardless of who was responsible for making that

---

[6] Plaintiffs contend that Paul Sharma is also liable for breach of contract, but the claims against Paul Sharma have been automatically stayed pending Paul Sharma's bankruptcy proceedings.

[7] Defendant Sharma Hospitality was not a defendant in the initial action, and did not sign the Settlement Agreement relating to that action

[8] *See, e.g.*, O.C.G.A. § 13-4-23 ("If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other party from performance."); *Travelers Indem. Co. v. West Ga. Nat. Bank*, 387 F.Supp. 1090, 1095 (N.D.Ga. 1974)("When the conduct of one party prevents the execution of the exact terms of the contract, he may not then complain of the noncompliance of the other party."); *Taliafaro Inc. v. Rose*, 220 Ga.App. 249, 250 (1996)("Where a contract provides for performance of an obligation, the party bound to perform the obligation may be relieved and the obligation waived, where the other party to the contract repudiates the obligation by act or word, or takes a position which renders performance of the obligation useless or impossible.").

payment, Plaintiffs were relieved from any obligations they had under that agreement, including, but not limited to, Plaintiffs' agreement to hold only Paul Sharma responsible for payments under the agreement and Plaintiffs' agreement not to pursue further legal action against any and all Defendants.

Furthermore, it would be antithetical to the remedial purpose of the FLSA to allow Defendants to benefit from breaching the agreement by allowing all defendants to avoid liability by designating, with the assistance of counsel (an experienced bankruptcy attorney), Paul Sharma as the only defendant responsible for payments, knowing it would take "a miracle" for Paul Sharma to pay anything to Plaintiffs and that Paul Sharma would instead declare bankruptcy in an attempt to absolve all defendants of liability- a scheme that indeed came into fruition when Paul Sharma declared bankruptcy shortly after breaching the Settlement Agreement.[9]   Paul Sharma testified that it would have taken "a miracle" for him to pay anything to Plaintiffs[10].  Hoping for a miracle is not a valid basis upon which

---

[9] *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1265 (11th Cir. 2008)("…the FLSA is a remedial statute that should be liberally construed."); *Antenor v. D & S Farms*, 88 F.3d 925, 933 (11th Cir. 1996)(recognizing the humanitarian and remedial purpose of the FLSA); *Chin Hui Hood v. JeJe Enterprises, Inc.*, 207 F.Supp.3d 1363, 1370 (N.D.Ga 2016)(recognizing the "comprehensive remedial purposes of the FLSA."); *Daniel v. Winn-Dixie Atlanta, Inc.*, 611 F.Supp. 57, 59 (N.D.Ga. 1985)("The FLSA's purpose is remedial: to ensure that all employees may obtain a decent standard of living.").

[10] Defendants did not even pay the $10 that Defendants Shaun Sharma, Paul Sharma and NAI agreed to pay in consideration for the General Release, attached hereto as "Exhibit 1," which was an improper precondition to Defendants entering

to induce another party to enter a contract.  Instead, relying on the occurrence of a

miracle when convincing another party to enter a contract, to their detriment, is

fraudulent inducement.   Such fraudulent inducement, followed by Defendants'

inevitable breach, allows Plaintiffs to void the entire Settlement Agreement,

including any agreement not to file suit against any Defendant.[11]   Whether

Defendants fraudulently induced Plaintiffs to enter the Settlement Agreement is a

question of fact for the jury.   *Brown v. Mann*, 237 Ga.App. 247, 249

(1999)("except in plain and indisputable cases, scienter in actions based on fraud is

an issue of fact for jury determination").  Dismissing Plaintiffs' claims against

the FLSA Settlement Agreement.  *See, Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1352 (2010) ("a pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer….a pervasive release in settlement of an FLSA action is both unfair and incapable of valuation. A compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny.").

[11] *See, e.g.*, O.C.G.A. §§ 13-5-5 ("Fraud renders contract voidable at the election of the injured party") and 23-2-57 ("To prove fraud in Georgia, "slight circumstances may be sufficient to carry conviction of its existence."); *Bakchus v. Tejo Ltd. Inc.*, 2010 WL 2925384 at *3 (S.D.Fla. 2010)("…at the time of execution of a contract, if a party promises to perform an act in the future to induce the other party to enter into the contract, but has a secret undisclosed intent not to perform the act, the party has fraudulently induced the other party to enter into the contract"); *Allapattah Services, Inc. v. Exxon Corp.*, 61 F.Supp.2d 1326, 1328 (S.D.Fla. 1999)("The underlying purpose of damages in actions premised on a breach of contract is to place the non-breaching party in the same position it would have occupied if the contract had not been breached."); *Federal National Mortgage Association v. Prowant*, 209 F.Supp.3d 1295, 1312 (N.D.Ga. 2016)("Under Georgia law: Generally, one injured by a breach of a contract has the election to rescind or continue under the contract and recover damages for the breach.  But to justify rescission, there must be a material nonperformance or breach by the opposing party.").

Shaun Sharma and NAI would result in a benefit to Shaun Sharma and NAI and cause serious detriment to the Plaintiffs through no fault of their own. It is for a jury to decide whether Defendants Paul Sharma, Shaun Sharma, and NAI intended to deceive Plaintiffs and induce them to enter the Settlement Agreement under a false pretense - that payments would be made without divine intervention.

All of the signatories to the Settlement Agreement are bound to the terms set forth therein, and when Paul Sharma failed to make the first payment, all defendants were in breach. *See Hamilton v. Mandel*, 103 Ga. 788 (1898). Under Georgia contract law, upon Defendants' breach, Plaintiffs can to seek specific performance or to relieve any obligations they had under the Settlement Agreement. Plaintiffs have elected to relieve their own obligations under the Settlement Agreement, including their agreement not to file suit against Defendants Shaun Sharma and NAI. Furthermore, the recently-discovered intent of Defendants in assigning all payment responsibilities to an individual who had no reasonable hope of fulfilling his obligations indicates a fraudulent intent in inducing Plaintiffs to sign the agreement (and this Court to approve that agreement), and such actions should not be endorsed by this Court.

**Plaintiffs' claims are not subject to res judicata**

The parties to the initial agreement specifically agreed that, in exchange for the payments set forth in that agreement, Plaintiffs would dismiss their claims

without prejudice.  *See* "Exhibit 2," hereto, Settlement Agreement (doc. 10-3 at 1, ¶ D; 3, ¶ 3(e); and 4, ¶ 5), and Order dismissing the initial case (doc 10-6 at 1, 3, and 4).  If the parties to the instant matter had wanted this case dismissed <u>with</u> prejudice, they could and would have agreed to do so.  Instead, as reflected by the term sheet, settlement agreement, and this Court's Order, Plaintiff's initial case was dismissed <u>without</u> prejudice.  The fact that Defendants, who were at all times represented by counsel, agreed to have this case dismissed <u>without</u> prejudice shows that the parties and the Court contemplated that, should Defendants breach the agreement, Plaintiffs could file similar or identical claims.  The fact that the parties agreed to dismiss the claims <u>without</u> prejudice is the distinguishing factor from all of the cases cited by Defendants in claiming that a dismissal based on a settlement invokes res judicata.[12]  The term "without prejudice" itself lends credence to

---

[12] "A dismissal without prejudice does not constitute a 'final judgment on the merits' and this has no res judicata effect."  *Smith v. Mercer*, 266 Fed.Appx. 906, 908 (11th Cir. 2008).  "Rule 41(a), which, in discussing the effect of voluntary dismissal by the plaintiff, makes clear that an 'adjudication upon the merits' is the opposite of a 'dismissal without prejudice'."  *Semtek Intern. Inc. v. Lockheed Martin Corp.*, 121 S Ct. 1021, 1026 (2001).  "The primary meaning of "dismissal without prejudice," we think, is dismissal without barring the plaintiff from returning later, to the same court, with the same underlying claim… Thus, Black's Law Dictionary (7th ed.1999) defines "dismissed without prejudice" as "removed from the court's docket in such a way that the plaintiff may refile the same suit on the same claim," [citation omitted] and defines "dismissal without prejudice" as "[a] dismissal that does not bar the plaintiff from refiling the lawsuit within the applicable limitations period.")  *Id.* at 1027; *see, also, e.g., Cooter & Gell v. Hartmax Corp*, 110 S. Ct. 2447, 2456 ("[D]ismissal ... without prejudice" is a dismissal that does not "operat[e] as an adjudication upon

Plaintiff's ability to refile the case, as "without prejudice" is typically understood to mean "without prejudice to refile."  *See Semtek*, 531 U.S. at 505 ("The primary meaning of 'dismissal without prejudice,' we think, is dismissal without barring the defendant from returning later, to the same court, with the same underlying claim."); *Alexander v. Bradshaw,* 599 F. App'x 945, 946 (11th Cir.2015) (per curiam) ("Where an action is dismissed without prejudice, the plaintiff may refile before the expiration of the applicable statute of limitations.").

Assuming the Court deems that the dismissal of Plaintiff's claims, without prejudice, may invoke res judicata, the Court must then examine the elements of res judicata[13] to determine whether res judicata applies to the instant action. Plaintiffs admit that this Court had jurisdiction to dismiss the first action.  As indicated above, case law supports Plaintiffs' position that, by having the previous case dismissed without prejudice, the previous case was not determined on its merits, but the parties and the Court instead recognized that same or similar causes

the merits," Rule 41(a)(1), and thus does not have a res judicata effect."); *Hughes v. Lott*, 350 F.3d 1157, 1162 (11th Cir. 2003); *Mitchell v. International Consol. Cos., Inc.* 2014 WL 6997609 at * 8 (S.D.Fla. 2014)("'The effect of a voluntary dismissal without prejudice is to render the proceedings a nullity and leave the parties as if the action had never been brought.' *In re Piper Aircraft Distrib. Sys. Antitrust Litigation,* 551 F.2d 213, 219 (8th Cir. 1977). A dismissal 'without prejudice' lacks the necessary element of *res judicata* because it is not a final determination on the merits. *see also* Restatement 2d, Judgments, § 20(1)(b).").

[13] Whether (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) both cases involve the same parties or their privies; and (4) both cases involved the same causes of action.  *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001).

of action may be refiled.   Strengthening Plaintiffs' position is the fact that the Settlement Agreement was entered into with Defendants having no reasonable expectation, absent "a miracle," to pay anything to the Plaintiffs.   Legal contracts should be based on reality, not the hope that "a miracle" will occur.   It would be improper and antithetical to the remedial purposes for the FLSA for defendant employers to benefit from their own fraudulent inducement in entering a Settlement Agreement with their former employee(s).

Defendants incorrectly state, on page 11 of their motion, that "both cases involve the exact same parties (absent one named plaintiff)."   Plaintiffs in the initial case were Edward Scott, Debbie Richards, Shannon Akin, and Marty Williams.   *See* 5:18-CV-00006-LGW-BWC at Docs. 1, 18 and 18-1.   Only half of the plaintiffs in the initial matter, Edward Scott and Debbie Richards, are Plaintiffs in the instant matter.   Defendants in the initial case were employers Shaun Sharma, Paul Sharma[14] and NAI.   Defendants in the instant case are Shaun Sharma, Paul Sharma, NAI, and Sharma Hospitality, LLC[15].   The parties to the previous action and the instant action are not the same.

---

[14] Plaintiffs address Defendants' claim that neither Paul nor Shaun Sharma were employers of Plaintiffs on pages 16-18 of their response to Defendant's first motion for summary judgment.   Doc. 7

[15] Defendant Sharma Hospitality has no standing to request that any claims against it be dismissed due to any prior Settlement Agreement to which it was not a party.

Particularly telling is the language of the Settlement Agreement upon which Defendants rely in claiming res judicata applies, which specifically states that all payments to Scott and Richards "shall be characterized as liquidated damages **pursuant to the anti-retaliation provisions of the FLSA**."  Doc. 10-3 at 2, ¶¶ 3(b) and 3(c)[emphasis added].   Stated differently, none of the money that Defendants agreed to pay to Plaintiffs pursuant to the Settlement Agreement was intended to compensate Plaintiffs for unpaid minimum wage and overtime compensation.  For FLSA settlement agreements to be valid, they must specifically identify, among other information, the wages being settled and the amount of liquidated damages.[16] Not only did the Settlement Agreement fail to specifically

---

[16] *D.A. Shulte v. Gangi*, 328 U.S. 108, 114(1946)("the remedy of liquidated damages [for minimum and overtime wage violations] cannot be bargained away by bona fide settlements of disputes over coverage.")(cited by *Dees v. Hydradry, Inc.*, 706 F.Supp.2d 1277 (S.D.Fa. 2010) in holding "Thus, *Gangi* offers an employer that disputes FLSA coverage only two choices.  The employer must either (1) pay employees the disputed wage or (2) litigate the coverage issue and risk paying liquidated damages [and attorney's fees] in addition to the unpaid wage.");  *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir.1982) ("If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement…"); *Moreno v. Regions Bank*, 729 F.Supp.2d 1346, 1350 (2010)("An employee's right to a minimum wage and overtime is unconditional, and the district court should countenance the creation of no condition, whether confidentiality or any other construct, that offends the purpose of the FLSA. An employer is obligated unconditionally to pay a minimum wage and overtime to the complainant and his fellow employees; the district court should not become complicit in any scheme or mechanism designed to confine or frustrate every employee's knowledge and realization of FLSA rights.").

allocate or provide computations for any funds intended to reimburse Plaintiffs for unpaid minimum wage, overtime compensation, or liquidated damages associated with same, the plain language of the Settlement Agreement makes it clear that the payments (that were never made) to Plaintiffs related solely to the anti-retaliation provisions of the FLSA.  Accordingly, to the extent the court finds the Settlement Agreement properly invokes res judicata, res judicata would only apply to Plaintiff's claims of retaliation under the FLSA.

**Enterprise Coverage under the FLSA applies to Defendants**

Enterprise coverage exists where a business conducts over $500,000 in business per annum and has two or more employees engaged in enterprise coverage[17].  Defendants have intentionally misled the Court regarding the amount of business done by their hotel in Douglas, Georgia and the hotel's impact on interstate commerce.

Defendants claim that the corporate defendants' "bank statements indicate that the hotel made $92,441.67 in 2016, $51,356.45 in 2017, and $71,925.78 in 2018 for the months of May, June and July."  There is no need for the Court or the parties to provide partial information which would lead to speculation and conjecture regarding the hotel's annual gross income.  The hotel's bank statements, as produced by Defendants, show that Defendants' hotel deposited $278,709.06

---

[17] Plaintiffs thoroughly discussed their status as employees on pages 13-15 of their response to Defendant's first motion for summary judgment.  Doc. 7.

into its bank account in 2016, $273,433.89 in 2017, and $340,075.86 in 2018.[18] Ex. 3 at 3, ¶ 3.  While these numbers alone do not meet the $500,000 threshold for FLSA coverage, Defendants failed to remit a substantial portion of its income to the hotel's checking account; the largest of which is the rent Defendants charged to its employees, which should be included in the calculation of jurisdiction threshold in FLSA cases.  *Francois v. Fried Green Tomatoes, Inc.*, 306 Fed.Appx. 443, 444-445 (11th Cir. 2008).

Defendants admit that they charge their employees $548.75 per week to live at the hotel.  Ex. 3 at 2, ¶ 2.  The only two work schedules produced by Defendants during the discovery phase of this litigation show that 10 and 11 employees, respectively, worked during the weeks to which those schedules refer.  Ex. 3 at 10, ¶ 14.  Due to Defendants' failure to keep contemporaneous records regarding the cost to defendants of providing housing to their employees and records regarding wage calculations, Defendants are unable to apply any lodging credits to Plaintiffs' compensation.  *Balbed v. Eden Park Guest House, LLC*, 881 F.3d 285, 290 (4th Cir. 2018)("DOL regulations require an employer claiming the § 203(m) credit for lodging to keep two kinds of records: (1) records regarding the cost to the

---

[18] In the interest of economy and efficiency, Plaintiffs are producing herewith the first pages of Defendants' respective bank statements used to pay the hotel's expenses, with handwriting at the top, as written and produced by Defendants.  To the extent Defendants claim these numbers do not reflect the hotel's annual deposits, or if the Court otherwise would like the complete annual statements, such statements will be produced in their entirety.

employer of providing the housing and (2) records regarding wage calculations taking lodging into account."). The amount paid by Defendants' employees to Defendants in rent were not wages, but was instead income to the hotel, whether or not Defendants deposited that amount in the hotel's bank account or reported that amount to the Court (or the IRS). Multiplying $548.75 (the amount charged by Defendants to their employees in rent per week) by 11 (the number of employees living at the hotel at one time, according to the schedules produced by Defendants) gives a total of $5,487.50 per week in unreported income generated by Defendants renting rooms to their employees. Multiplying that number by 52 (the number of weeks in a year) gives a total of $313,885.00 in unreported/undeposited annual income to Defendants. Just because those deposits were not deposited into Defendants' bank accounts does not mean that those transactions did not occur. Indeed, those transactions form one basis upon which Defendants claim they did not violate the FLSA, as Defendants claim that the $548.75 it charges its employees in rent per week, when combined with the $50 cash payment per week paid to their employees, put those employees above minimum wage.[19] Accordingly, the annual income generated by the hotel, as reflected in the hotel's bank statements, combined with the annual income generated by the hotel through

---

[19] As discussed in further detail in Plaintiffs' Motion for Partial Summary Judgment, Defendants are not allowed to apply their lodging credits to Plaintiffs' compensation for minimum wage and overtime calculation purposes. Doc. 32 at 10-15.

renting rooms to its employees, gives a total income of at least $592,594.06 in 2016, $587,318.84 in 2017, and $653,960.86 in 2018.

Because a proper accounting of business generated by Defendants shows that Defendants well exceeds the $500,000 threshold for FLSA coverage, there is no need for this court to consider the other unreported income generated by Defendants in the form of "cash draws" or "IOUs" to its employee-residents.  Ex. 3 at 3 n 2.

Plaintiffs requested, following the conclusion of the December 11, 2019 depositions of Defendants, and reiterated again in a January 2, 2020, email correspondence, that Defendants withdraw or amend their motion for summary judgment to conform with the evidence, lest risk sanctions.  Fed. R. Civ. P. 56(h); *See, also, Forsberg v. Pefanis*, 634 Fed.App. 676, 679(11th Cir. 2015)("A court may impose sanctions for litigation misconduct under its inherent power."); *In re Ocon*, 2009 WL 405370 ("Federal courts possess inherent authority to impose sanctions against attorneys and their clients.").  Defendants failed to heed Plaintiffs' advice.

Defendants repeatedly claim that they do not engage in interstate commerce. *See Declarations of Shaun Sharma*, Doc. 5-2 at 3, ¶ 12 and 4 at ¶ 19; doc. 10-1 at 3-4, ¶ 12 and 5, ¶ 19. Defendants admitted, during their depositions, that they regularly conduct business with businesses located outside of the State of Georgia, including businesses located in Virginia, San Francisco, Illinois, New York,

Arkansas, New Jersey, Florida, Texas, Barbados, Antigua, and London.  Ex. 3 at 6,

¶ 11.  Defendants were unable to identify who made those financial transactions on

behalf of the hotel, or for what business purpose(s).  *Id.*  Defendants admit that

they conduct financial transactions with out-of-state entities and purchase "supplies

and stuff" from outside of Georgia because "you would get them cheaper" to buy

those items elsewhere.  *Id.*  The evidence shows that Defendants are engaged in

interstate commerce.

In addition to regular out-of-state purchases and financial transactions made

by Defendants for the benefit of Defendants' hotel, the two schedules provided by

Defendants show that, on any given day, there are three front desk clerks who

assist out-of-state guests, take their identification and license plate numbers[20]. Ex 3

at 5, ¶ 7; 6 ¶ 9; 9-10 ¶ 13; and 10 ¶ 14.

As discussed, *supra*, Defendants' income, when properly calculated to

include rental income received from their employees, exceeds $500,000.

Defendants regularly conduct business with financial institutions located outside of

Georgia, regularly purchase hotel supplies from businesses located outside of

Georgia, and employ at least three individuals (front desk clerks) who directly deal

---

[20] Defendants have refused to provide the identification or license plate numbers of the hotel's guests to Plaintiffs.  Plaintiffs ask that the Court can make a negative inference that, if those documents (which were inserted into the hotel's computer program and are readily available to Defendants) had been produced, they would support the testimony that a number of the hotel's guests were migratory workers or out-of-state guests.

with, and process payment from, the hotel's out-of-state/migrant worker guests. Ex. 3 at 6 ¶ 9.  Defendants are therefore subject to enterprise liability under the FLSA.

**Individual Coverage under the FLSA applies to Plaintiffs**

Assuming, *arguendo*, the Court finds that Defendants are not subject to enterprise liability, the FLSA still applies because both Plaintiffs were subject to individual coverage under the FLSA.  Individual coverage under the FLSA applies where an employee was (1) engage in commerce or (2) engaged in the production of goods for commerce.  *Thorne v. All Restoration Services, Inc.*, 448 F.3d 1264, 1266 (11th Cir. 2006).  Plaintiffs did not produce goods for commerce, but were both individually engaged in commerce.  Plaintiff Richards had regular contact with the hotel's out-of-state guests and regularly processed financial transactions with financial institutions located outside of the State of Georgia.  Ex. 3 at 5 ¶ 7; 6 ¶ 9; and 9-10 ¶ 13.  Pursuant to the FLSA's handling clause[21], the fact that a number of the materials regularly utilized by both of the Plaintiffs in the performance of their duties for Defendants were manufactured and/or purchased outside of the State of Georgia confers individual coverage under the FLSA upon Plaintiffs.

---

[21] Plaintiffs direct the Court to their discussion of the FLSA's handling clause described on pages 8-13 of their response to Defendant's first motion for summary judgment.  Doc. 7.

Plaintiffs requested, through their (Rule 30(b)(6)) deposition notice of NAI, that Defendants designate an individual with knowledge of the "[m]aterials used by Plaintiffs to perform the essential functions of their jobs."  "Exhibit 5," hereto, at 5, ¶ 9.  While Defendant NAI confirmed that Plaintiff Richards regularly utilized telephones, credit card machines and computers, and Plaintiff Scott regularly utilized hammers, nails, screwdrivers, screws and other parts, tools, and materials to work on the hotel's air conditioners and other maintenance work, to perform their respective duties for Defendants, Defendants were unable to identify where the tools and materials utilized by Plaintiffs in the performance of their duties for Defendants were purchased or manufactured.  Ex. 3 at 7-8 ¶ 11.  Defendants are not allowed to hide behind their lack of preparation and failure to answer Plaintiffs' questions regarding the materials used by Plaintiffs to perform their jobs when that topic was specifically noted in Plaintiffs' 30(b)(6) deposition notice.  *King v. Pratt & Whitney, a Div. of United Technologies Corp.* 161 F.R.D. 475, 476 (S.D.Fla. 1995)("Rule 30(b)(6 obligates the responding corporation to provide a witness who can answer questions regarding the subject matter listed in the notice.").  The Court can impose sanctions for Defendants' refusal to properly prepare for a 30(b)(6) deposition.[22]        In this case, a negative inference is justified that, had

---

[22] *See, e.g., King*, 161 F.R.D. at 476 ("If the designated deponent cannot answer those questions, then the corporation has failed to comply with
its Rule 30(b)(6)obligations and may be subject to sanctions, etc. The corporation

Defendants properly prepared and answered the questions regarding the origin of the tools and materials regularly used by Plaintiffs during their employment, the answers would have revealed that a number of the materials regularly used by Plaintiffs in fulfilling their duties were manufactured or purchased outside of the State of Georgia.[23]

Plaintiff Richards had direct contact with out-of-state guests at Defendants' hotel and processed financial transactions with credit card companies located outside of the State of Georgia on behalf of Defendants' hotel.  Ex. 3 at 5 ¶ 7; 7 ¶ 11; and 9-10 ¶ 13.  Plaintiff Scott regularly handled and repaired tools, materials, machinery, and appliances which were manufactured or purchased outside of the State of Georgia as part of his duties at Defendants' hotel. Ex. 3 at 5 ¶ 7 and 7-8 ¶ 11.   Accordingly, both plaintiffs are subject to individual coverage under the FLSA.

---

has an affirmative duty to produce a representative who can answer questions that are both within the scope of the matters described in the notice and are "known or reasonably available" to the corporation. Rule 30(b)(6) delineates this affirmative duty."); QBE Ins. Corp. v. Jorda Enterprises, Inc.  277 F.R.D. 676, 689- (S.D. Fla. 2012)("The duty to prepare a Rule 30(b)(6) witness goes beyond matters personally known to the designee or to matters in which the designated witness was personally involved [citation omitted].  The duty extends to matters reasonably known to the responding party…. The rule provides for a variety of sanctions for a party's failure to comply with its Rule 30(b)(6) obligations, ranging from the imposition of costs to preclusion of testimony and even entry of default.").

[23] Indeed, such an inference is reasonable, since there are no plants in Georgia which manufacture computers, telephones, air conditioners, refrigerators, and other materials using parts sourced solely in Georgia.

**Plaintiffs have sufficiently pled the elements for a claim of Intentional Infliction of Emotional Distress[24]**

Plaintiffs sufficiently pled all four elements necessary to establish a claim for intentional infliction of emotional distress:  (1) the conduct was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress and (4) the emotional distress was severe.     *Trimble v. Circuit City Stores*, 220 Ga.App. 498, 499 (1996).     Plaintiffs' Complaint states that Defendants unlawful behavior towards them was intentional.  *See* Complaint (doc. 1) at 4, ¶ 8; and 11-12, ¶ 36 ("Defendants intentionally engaged in conduct which was extreme and outrageous…").  Plaintiffs' Complaint alleges that Defendants conduct in terminating and forcefully evicting them "was extreme and outrageous." *Id.*[25]     Both Plaintiffs allege in the Complaint that they have suffered emotional distress, and that Defendants knew, or should have known, that their actions would cause emotional distress to Plaintiffs.  *Id.* at 12, ¶ 37-38.  A reasonable juror could

---

[24] Defendants' first Motion for Summary Judgment claims that Plaintiffs failed to sufficiently plead retaliation and intentional infliction of emotional distress. Defendants' second Motion for Summary Judgment claims that Plaintiffs failed to sufficiently plead intentional infliction of emotional distress (not retaliation).  Out of an abundance of caution, Plaintiffs incorporate herein pages 18-21 of their response (doc. 7) to Defendants' first motion for summary judgment.

[25] Not only was Plaintiff Scott forced to live in his truck for two weeks following his termination/eviction (Scott Dep. (doc. 32-3) at 16:16-19), but, following the filing of the initial lawsuit, Defendant Shaun Sharma filed frivolous criminal actions against both Plaintiffs.  After those charges were dismissed by a Magistrate Judge in Coffee County (see "Exhibit 4," hereto), Shaun Sharma found a police officer willing to file the same charges against Plaintiffs.  Shaun Sharma Dep. at 36:19-23 and 55:21-56:5.  Shaun Sharma has not withdrawn those charges.

independently determine that the allegations in Plaintiffs complaint, as supported by the facts of this case, if true (as all disputed facts in a motion for summary judgment must be resolved in the non-movant's favor), were severe, even if the word "severe" is not specifically used in the Complaint.  In fact, the Georgia Court of Appeals has upheld a jury verdict against a property owner for intentional infliction of emotional distress where a tenant was unlawfully and forcefully evicted, after which, much like this case, the landlord proceeded to file frivolous criminal charges against the tenant.  *Waller v. Rymer* 293 Ga.App. 833 (2008).  To dismiss Plaintiff's IIED claim due to semantics used in Plaintiffs' Complaint would abrogate the purpose of that statute.

**CONCLUSION**

The majority of "facts" relied upon by Defendants in their instant motion, as set forth in a declaration of Shaun Sharma attached thereto, are directly refuted by the evidence of the case.  Defendants have intentionally failed to pay Plaintiffs minimum wage and overtime compensation.  Defendants claim that their illegal pay structure was borne of altruism:  thinking that they are helping the disenfranchised by giving them a room over their head in exchange for 60+ hours of work and $50 per week.  Plaintiffs worked for an equivalent of 83 cents an hour, not taking overtime compensation into account.  That is not a living wage.  That does not enable the disenfranchised individuals working for Defendants an

opportunity to save money in the homes of losing the "disenfranchised" label. Defendants are not helping their employees; Defendants are taking advantage of their employees by forcing them to work for 83 cents an hour and work overtime without compensation under threat of being thrown out on the street like Plaintiffs. Indeed, when Plaintiff Scott complained about working overtime without compensation, he was terminated, Defendants removed the locks to his door and had the police forcefully evict him, forcing Plaintiff Scott to spend the next 14 days living in his car.  After Plaintiffs filed a lawsuit seeking unpaid minimum wage and overtime compensation, Defendants twice filed felony criminal charges related to alleged damage to rooms which Defendants erroneously claim were occupied by Plaintiffs despite having no legal standing to bring such claims against Plaintiffs.[26] *See* O.C.G.A. 44-7-35(b).   Perhaps denying Defendants' motion for summary judgment and compelling Defendants to explain their actions to a jury of their peers will finally convince Defendants to stop paying their indigent employees 83 cents an hour and forcing them to work overtime without compensation under fear of immediate and unlawful eviction - practices that Defendants have brazenly continued to utilize since Plaintiffs first sought redress for unpaid minimum wage and overtime compensation over two years ago.

---

[26] While Plaintiffs' retaliation claims are not a subject of this motion for summary judgment, Defendants post-employment actions against Plaintiffs discredit Defendants' claims that their pay structure was intended to be altruistic.

Respectfully submitted, this 5th day of March, 2020.

*/s/ Tyler B. Kaspers*
Tyler B. Kaspers, Ga. Bar No. 445708
THE KASPERS FIRM, LLC
152 New Street, Suite 109B
Macon, GA  31201
404-944-3128
tyler@kaspersfirm.com

Counsel for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

EDWARD SCOTT and DEBBIE          )
RICHARDS,                        )
                                 )   CIVIL ACTION FILE NO.
    Plaintiffs,            )        5:19-cv-22-LGW-BWC
                                 )
    v.                     )
                                 )   For Violations of the Fair Labor
NORTH AMERICAN INNS, LLC,        )   Standards Act of 1938, As Amended
SHARMA HOSPITALITY, LLC,         )
and SHAUN B. SHARMA,             )
                                 )
    Defendants.            )

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2020, I filed the foregoing PLAINTIFFS'

RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

using the Court's CM/ECF system, which will automatically send an electronic

copy of this document to:

Howard P. Slomka
Busch, Slipakoff, Mills & Slomka, LLC
3350 Riverside Parkway, Suite 2100
Atlanta, GA 30339

           */s/ Tyler B. Kaspers*
           Tyler B. Kaspers, Ga. Bar No. 445708
           THE KASPERS FIRM, LLC
           152 New Street, Suite 109B

-26-

Macon, GA  31201
404-944-3128