IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| EDWARD SCOTT and DEBBIE RICHARDS, | ) ) ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiffs, | ) ) | 5:19-cv-22-LGW-BWC |
| v. | ) ) | |
| | ) | For Violations of the Fair Labor |
| NORTH AMERICAN INNS, LLC, SHARMA HOSPITALITY, LLC, and SHAUN B. SHARMA, | ) ) ) ) | Standards Act of 1938, As Amended |
| Defendants. | ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Come now Plaintiffs, Edward Scott and Debbie Richards, by and through their undersigned counsel, and file this reply in support of Plaintiffs' Motion for Partial Summary Judgment (doc. 32)(hereinafter "Plaintiff's Motion").

## Introduction

Defendants have failed to properly respond to (1) Plaintiffs' Statement of Material Facts and (2) a number of arguments in Plaintiffs' Motion, and have therefore abandoned any objections or arguments in response to same. The few arguments set forth in Defendants' response that respond to Plaintiffs' Motion are insufficient to deny Plaintiffs' Motion, and summary judgment is warranted.

## Defendants have failed to sufficiently rebut any facts contained in Plaintiff's Statement of Facts

In response to Plaintiffs' Statement of Material Facts (doc. 32-1), Defendants filed two nearly-identical documents, a declaration of Shaun Sharma (doc. 35) and a Response to Plaintiff's Statement of Material Facts (doc. 36), neither of which adequately address the individually-numbered statements in Plaintiff's statement.

Defendants' Response to Plaintiffs' Statement of Facts mirrors Shaun Sharma's declaration,[1] and neither contains any citations to the record and is based entirely on unsupported, self-serving statements made by an unqualified individual without personal knowledge of the allegations therein. Not only do Defendants fail to provide any citation to the record in their response to Plaintiffs' Statement of Facts, but Shaun Sharma makes a number of false statements intended to mislead the Court.[2] Shaun Sharma also makes defamatory statements about Plaintiff

---

[1] As an initial matter, Defendant Shaun Sharma's declaration is invalid because he did not sign the declaration as "true under penalty of perjury." 28 U.S.C. § 1746.
[2] *Compare* Doc. 35 at 4, ¶ 22 ("DISPUTE as Sharma Hospitality filed criminal complaint not all Defendants." *with* Doc. 37-4 (identifying Shaun Sharma, not Sharma Hospitality, as the Criminal Warrant Applicant); and *Compare* 35 at 4, ¶ 25 ("DISPUTE as the cost [to the hotel incurred in providing rooms to their employees] is the total annual operating costs divided by the number of usable rooms" *with* doc. 34-3 at 2-5 (showing operating costs that have nothing to do with providing rooms to employees, such as advertising, bank payments, landscaping, fuel, and travel). In fact, Defendants claim, without any citation to authority, that the "costs of the present litigation" should be included in the lodging credit reduced from Plaintiffs' compensation during their employment. Doc. 34 at 14 ("Taking into account asset depreciation, *costs of the present litigation*…the

without any evidentiary support, such as claiming Plaintiff Scott, who was unmarried during his employment with Defendants, "beat up his wife and was hiding from the police." Doc. 35 at 5, ¶ 40. Fed. R. Civ. P. 56(h) states "If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court – after notice and a reasonable time to respond – may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions."[3]

**Defendants failed to adequately respond to Plaintiffs' discussion of the Economic Realities Test**

Whether a worker is an employee or independent contractor is a question of law to be determined by the Court, not a question of fact to be determined by a jury. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1310 (11th Cir.). The Court must answer this question of law by looking at the totality of the facts presented, regardless of any alleged discrepancy of fact. Where a party fails to respond to another party's argument, the arguments are conceded. *Jones v. Bank of America, N.A.*, 564 Fed.App. 432 (11th Cir. 2014). Where a party intentionally misleads the

---

lodging costs charged to Plaintiffs reflect the costs of maintaining the rooms and the hotel as a going concern.")(emphasis added). `
[3] *See, e.g.,* Fed. R. Civ. P. 46(e)(2), *Hegre v. Alberto-Culver USA, Inc.*, 508 F.Supp.2d 1320, 1325 (S.D.Ga. 2007), *Whitesell Corporation v. Electrolux Home Products, Inc.*, 2016 WL 11317428 at *2-3 (S.D.Ga. 2016), and *McGee v. Sentinel Offender Services, LLC*, 2011 WL 10067985 at *6 (S.D.Ga. 2011).

3

Court with false statements, sanctions are appropriate. *Forsberg v. Pefanis*, 634 Fed.Appx. 676 (11th Cir. 2015).

Defendants only respond to one of the eleven Economic Realities Test factors discussed in Plaintiffs' Motion - permanency of the relationship. By failing to address the remaining elements of the Economic Realities Test, Defendants have conceded the veracity of Plaintiffs' arguments regarding same.

Instead of addressing the Economic Realities Test, Defendants argue that Plaintiffs were independent contractors because Plaintiffs were (1) "transient workers" who: (2) signed independent contractor agreements, (3) did not file their tax returns, and (4) were offered a choice to live at the hotel.[4]

Defendants neither defined, nor produced admissible evidence to support the contention that Plaintiffs were, "transient workers."[5] Nonetheless, to the extent Plaintiffs were transient workers (other than the period of time immediately following their unlawful terminations/evictions when they were rendered homeless by Defendants), the Eleventh Circuit, and other courts, have recognized that individuals subject to immediate eviction upon termination are the type of people most susceptible to wage and hour abuse. *Caro-Galvin v. Curtis Richardson, Inc.*,

---

[4] Defendants also claim that Plaintiffs were not tenants at will, but that relates to the ability of defendants to deduct a lodging credit from Plaintiffs' compensation, and is further discussed, *infra*.

[5] Plaintiffs both had residences prior to working for Defendants. Richards Dep. (doc. 32-2) at 4:15-17 and 6:20-25 Scott Dep. (doc. 32-3) at 9:15-23.

4

993 F.2d 1500, 1511-1512 (11th Cir. 1993)[6] and *Acosta v. TLE Residential, Inc.*, 2018 WL 4823396 at *2 (N.D.Cal. Oct. 4, 2018).

Defendants make other unsupported statements in their response relating to Plaintiffs' residency at Defendants' hotel, such as the hotel "frequently operates at less than 10% occupancy."[7] Absent a 7(i) commission exemption, which is not at issue in this case, the FLSA is not focused on volume of work, but hours worked. The fact that Defendants thought it "simply made more business sense to pay a fixed rate and provide housing with these contractors handled the work that came to them, rather than scheduling and paying a set hourly wage for a W-2 employee" does not make Defendants' actions any less of a FLSA violation. What an employer believes "makes sense" is irrelevant to the Economic Realities Test.

Defendants claim that Plaintiffs each signed independent contractor agreements (which Plaintiffs deny), but have not produced any such agreement signed by either Plaintiff. Defendants produced one unauthenticated copy of another (non-Plaintiff) employee's alleged four-page document (which was not produced during the discovery phase of this matter) which Defendants describe as

---

[6] "A third situation in which exploitation is possible is when employment is a condition of housing – when termination means eviction. Any action in that situation that displeases the employer – including complaining about work or housing conditions – could result in the worker being not only jobless but homeless as well. It is hard to image a situation in which a [] worker is more vulnerable."
[7] Defendants also contend that "Plaintiff Scott even wrote "will work for free room" on his application, without providing a copy of that alleged application.

"Contractor Documents." To the extent the Court finds a non-Plaintiff's employment contract relevant to Plaintiffs' claims, Plaintiffs note that page 3 of that document is lagged "**Employee** Breakdown" (emphasis added). Doc. 34-2. If Defendants believed its workers were independent contractors, this document would be titled "Contractor Breakdown," as opposed to "**Employee** Breakdown."

Plaintiffs never held themselves out to anyone as independent contractors, and Defendants' unsupported claim to the contrary should be disregarded by the Court. Defendants have presented no statutory or case authority for their position that "Plaintiffs are estopped from claiming an employee status when they have failed to report employment wages to the federal or state governments." The fact that neither plaintiff allegedly filed tax returns during their employment with Defendant merely shows that Plaintiffs did not earn enough income[8] to warrant filing tax returns (had Defendants provided Plaintiffs with the 1099s or W-2s necessary to complete those returns, which they did not). Defendants paid no state or federal taxes to the IRS for their workers despite Defendants' admission, on page 3 of Doc. 34-2, that "Social Security tax" and "Federal/state income tax[es]"

---

[8] At $50 per week, Plaintiffs earned $2600 per year working for Defendants.

were deducted from Defendants' workers' compensation.[9] If there is any party failing to report income to the IRS, it is Defendants, not Plaintiffs.

Defendants' statement that "Defendants offer all workers at the motel a choice to become employees or to operate as contractors" reflects Defendants' fundamental misunderstanding of the FLSA. Employees cannot sign away their rights under the FLSA, and the existence of written independent contractor or employee agreements are not dispositive under the Economic Realities Test. *See, e.g., Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 432 (11th Cir. 1994) ("FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and the legislative policies it was designed to effectuate.") and *McFeeley v. Jackson Street Entertainment, LLC* 825 F.3d 235, 240 (4th Cir. 2016). Parties cannot agree to be employees or independent contractors; that determination is a question of law based on the facts surrounding their employment, not an agreement between the parties. Giving the parties the ability to choose employee or independent contractor status would undermine the purpose of the FLSA in light of the employer's unequal bargaining power. Defendants' own statements on this matter are inconsistent, as Defendants claim, on pages 7-8 of their response, that "Defendant North American Inns LLC

---

[9] Also of note is that this document states that Defendants' employees have a "Take Home" amount of $262.27, contradicting the immediately-preceding page of that document, which shows that Ms. Lundy will only receive "$50 per week."

7

requested **all** of its transient workers to sign an Independent contractor Agreement…" and thereafter admit that "Defendants commonly enrolled **all** of its workers on the basis of independent contractor agreements." (emphases added).

Defendants argue that Plaintiff Richards' occasional selling of trinkets online makes her an independent contractor. That position is unsupported by case authority and, if true, every single person selling items on eBay or Etsy would be an independent contractor, regardless of their "day jobs." Such an expansive exclusion of individuals would run contrary to the remedial purposes of the FLSA and the Eleventh Circuit's Economic Realities Test.

**The Department of Labor's ("DoL's") finding that the Defendants were not covered by the FLSA was based on false statements made by Defendants Shaun Sharma to the DoL**

Defendants' reliance on a finding by the DoL is fundamentally flawed because Defendants intentionally provided false and misleading information to the DoL. The DoL's investigation consisted entirely of an interview with Shaun Sharma. Shaun Sharma presented misleading and incomplete financial information to the DoL which resulted in the DoL holding that there was no FLSA coverage because the Ds did not conduct over $500,000 in business in 2014, 2015, or 2016 (only 2016 is at issue in this case). As discussed on pages 14-17 of Plaintiffs' response to MSJ (doc. 37), when the rent paid by Defendants' employees to Defendants is included into the calculation of Defendants' gross

business, Defendants conducted well over $500,000 in gross business during the applicable pay period. The $500,000 threshold encompasses all business conducted by an employer, not just "gross sales" reflected on a bank statement or potentially incorrect tax returns. *Flores v. Nuvoc, Inc.* 610 F.Supp.2d 1349, 1355 (S.D.Fla. 2008)[10]; *Arilus v. Joseph A. DiEmmanuele, Jr., Inc.*, 895 F.Supp.2d 1257, 1266 (S.D.Fla. 2012)[11]. The DoL relied on incomplete information provided by Shaun Sharma in determining that Defendants did not meet the $500,000 threshold for enterprise liability.

Shaun Sharma made other false and misleading statements to the DoL in an effort to convince the DoL that individual coverage did not apply to Defendants' workers. For example, Shaun Sharma told the DoL that Defendants' "workers do not handle any goods that have traveled in interstate commerce: all supplies pertaining to the hotel is picked up in Atlanta, GA by Mr. Shaun Sharma." Shaun Sharma knew this was a lie when he told it to the DoL. Sharma Hospitality Dep.

---

[10] ("Revenues may not be the only basis for determining total volume. In 1966, Section 203was amended to include "business done." The Supreme Court has stated, "the Senate Report in the 1966 amendments makes clear that the added language was intended to dispel any uncertainty that revenue derived from services, rentals or loans, even though perhaps not literally 'sales,' was nevertheless to be considered in measuring the dollar-volume limitation of § 3(a).")

[11] ("Clearly, the FLSA does not require a party to prove annual sales only through reliance on a corporate income tax return, i.e., other admissible evidence may be presented to establish the amount of annual sales or to challenge the accuracy of tax returns.")

(doc. 32-7) at 21:8-12; 24:24-25:2 (Defendants admit that they conduct business with other businesses located outside of the State of Georgia for "supplies and stuff" because "where you would get them cheaper for the hotel, [] we would buy those supplies down there."). Shaun Sharma also told the DOL that Defendants' "workers do not process any credit or debit card payments." Defendants have admitted that their front desk clerks, including Plaintiff Richards, regularly ran credit cards of Defendants' guests. NAI Dep. (doc. 32-6) at 140:3-141:20. Defendants have admitted that they regularly conduct business with financial institutions located in Virginia (Capital One), California (Wells Fargo), Illinois (Discover), London (Barclay's and BP credit cards), and New York (American Express). NAI Dep. at 111:6-113:7. Sharma Hospitality Dep. at 24:1-9. Shaun Sharma's false and misleading statements to the DoL are fraudulent, if not criminal, in nature, and the DoL's findings should be disregarded by this Court.[12] *See* 18 U.S.C. 1001; US v. Herring, 916 F.2d 1543 (11th Cir. 1990); De Leon-Granados v. Eller & Sons Trees, Inc., 581 F.Supp.2d 1295, 1315 ("…Defendants

---

[12] To the extent Defendants are claiming that their reliance on the DoL's finding preclude a third year of liability, the DoL's investigation took place after Plaintiffs had initiated their first litigation, Defendants have been unable to identify any attorney who allegedly provided information regarding compensation to defendants' workers (Paul Sharma Dep. at 43:2-10), and, because Defendants (through Shaun Sharma (Shaun Sharma Dep. at 25:18-21)) willfully implemented a pay policy which, intentionally or inadvertently, violates the FLSA, any "good faith" in paying Plaintiffs' compensation is irrelevant under the Eleventh Circuit's Preclusion Majority approach. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150 (11th Cir. 2016).

were on notice that this non-enforcement position posed no legal bar to individual claims.) and *Dean v. 1715 Northside Drive, Inc.*, 224 F.Supp.3d 1302, 1310-1311 (N.D.Ga. 2016)(" The plaintiff in the case at bar submits the following evidence to show that the defendants willfully issued a fraudulent information return: (1) evidence showing that Jones and 1715 Northside Drive received a letter in or around December 1993 from the U.S. Department of Labor's Wage and Hour Division ("WHD") in which the WHD classified the club's dancers as "employees" and not "independent contractors" [Doc. No. 92–4 at 15]; (2) an admission by the defendants that after purchasing the club in December 2013, they never sought legal advice as to their FLSA obligations to the plaintiff or other dancers—they instead apparently "informed themselves.")  Absent from Defendants' reply is any mention that the DoL explicitly told Shaun Sharma "that the workers are not independent contractors [and] Mr. Sharma stated that he understood." Doc. 34-1 at 6.

Defendant Shaun Sharma not only lied to the DoL in an attempt to convince the DoL that neither enterprise nor individual coverage under the FLSA applies to Defendants' workers, but all Defendants have needlessly perpetuated a defense - that Defendants' workers, including Plaintiffs, were independent contractors – that the DoL specifically told Defendants is not applicable.

**None of the 4000+ documents produced by Defendants in this matter meet the recordkeeping requirements of the FLSA**

It is the employer's burden to keep accurate records of workers' "wages, hours, and other conditions and practices of employment." *Anderson v. Mt. Clemons Pottery Co.*, 328 U.S. 680, 687.  "[W]here the employer's records cannot be trusted and the employee lacks documentation…an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* Plaintiffs have produced reliable evidence of hours worked and Defendants have failed to rebut that evidence with records of wages paid or hours worked.  The recordkeeping requirements are heightened for employers seeking to utilize a lodging credit under Section 3(m) of the FLSA, which requires employers to maintain contemporaneous records of the reasonable cost of lodging, as well as deductions from wages paid for lodging, on a work-week basis.  *Donovan v. New Floridian Hotel, Inc.* 676 F.2d 468 (11th Cir. 1982).  Defendants maintained no such documents.  NAI Dep. at 95:17-19 and 99:15-21.

Defendants claim to have met their evidentiary burden to support lodging deduction because they "produced 3845 pages of records including P&Ls, bank statements, tax returns, shift schedules, personal financials, daily shift reports, daily financial reports, and monthly financial reports for the years 2016, 2017 and 2018 showing:  check ins/outs/ lodging tac, laundry, tax, snacks, cash out, IOUs to

workers, and occupancy rates."[13] None of the documents provided by Defendants reflect records required to be maintained by employers utilizing a lodging credit under the FLSA. The purpose of the contemporaneous recordkeeping requirements of the FLSA is to allow a worker to determine whether they have been paid correctly, not an excuse for an employer to point to 3845 documents and essentially tell the employee "the ability to do a calculation may be somewhere in there" (which, in this case, is not present), especially where those documents are unauthenticated, self-serving, self-drafted, and otherwise inadmissible documents.

An employer must keep contemporaneous records of all lodging credits deducted from an employee's compensation as that compensation is paid. Defendants failed to make or maintain any such records or calculations and are therefore barred from applying a lodging credit.

Defendants claim that the "cost of the present litigation" should be deducted from Plaintiffs' compensation as a lodging credit. Such a position flies in the face of the remedial purpose of the FLSA.

---

[13] Defendants now claim that it offered its workers "live-in suites valued at $441 per week, plus a $50 charge for laundry, WIFI, cable and phones." Defendants have presented no evidence of these calculations as it relates to Plaintiffs' compensation, as required by the FLSA, and have previously provided disputed testimony regarding the value of the lodging credit taken from their workers' compensation, which undermines Defendants' contention that a lodging credit can be deducted from the records produced by Defendants. *Compare* NAI Dep. at 79:10-12 ($498.75 per week) *with* 94:25-95:1 ($548.75 per week). If Defendants cannot accurately testify as to the amount of lodging credits charged to its employees, how could Plaintiffs or the Court be expected to do the same?

Defendants improperly profited off of their employees through the lodging credits taken from their workers, disqualifying Defendants from applying any lodging credit to Plaintiffs' compensation. For the reasons set forth in Plaintiffs' Motion, this Court should find that Defendants are barred from applying any lodging credits to Plaintiffs' compensation in calculating unpaid wages.

**The plain language of Georgia's tenancy statutes shows that Plaintiffs were tenants-at-will**

Defendants attempt to paint the relationship between Defendants and Plaintiffs as "innkeeper" and "guests." However, Defendants admit they apply the same tenancy laws to their workers as they do any other guest. Paul Sharma Dep. (doc. 32-4) at 72:16-21. Defendants were not only Plaintiffs' landlords, but also Plaintiffs' employers. That is the primary distinguishing factor between the cases and legal positions posited by Defendants in claiming that Georgia's tenancy-at-will statute did not apply to Plaintiffs. Another distinguishing factors is that Plaintiffs, along with all of Defendants' other workers, lived at the hotel. *Id.* at 72:23-24. Defendants' regular hotel "guests," unlike Plaintiffs, never intended to establish residency at the hotel. As discussed, *supra*, workers who live on-site are particularly susceptible to an employer's abuse, abuse which materialized in this case when Plaintiffs were terminated and evicted within 24 hours of Plaintiff Scott complaining about unpaid overtime compensation.

Plaintiffs have set forth all elements necessary to establish tenancy-at-will under the plain language of Georgia's statute. However, Defendants' failure to evict Plaintiffs under Georgia's tenancy-at-will statute is only one of many reasons that Ds are not allowed to utilize a lodging credit under Section 3(m). Plaintiffs instead ask that this Court take the totality of the circumstances in determining: (1) whether Ps were independent contractors or employees, and (2) whether Defendants are entitled to deduct any lodging credit from Plaintiffs' wages pursuant to Section 3(m) of the FLSA. If the Court responds to each question in the negative, Plaintiffs are entitled to damages, and Defendants have no admissible evidence to rebut Plaintiffs' damages set forth in Doc. 1-3.

Submitted this 19th day of March, 2020.

>*/s/ Tyler B. Kaspers*
>Tyler B. Kaspers, Ga. Bar No. 445708
>THE KASPERS FIRM, LLC
>152 New Street, Suite 109B
>Macon, GA 31201
>404-944-3128

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | | |
|---|---|---|
| EDWARD SCOTT and DEBBIE RICHARDS, | ) ) ) | |
| | ) | CIVIL ACTION FILE NO. |
| Plaintiffs, | ) | 5:19-cv-22-LGW-BWC |
| | ) | |
| v. | ) | |
| | ) | For Violations of the Fair Labor |
| NORTH AMERICAN INNS, LLC, | ) | Standards Act of 1938, As Amended |
| SHARMA HOSPITALITY, LLC, | ) | |
| and SHAUN B. SHARMA, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2020, I filed the foregoing PLAINTIFFS'

REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

using the Court's CM/ECF system, which will automatically send an electronic

copy of this document to:

Howard P. Slomka
Busch, Slipakoff, Mills & Slomka, LLC
3350 Riverside Parkway, Suite 2100
Atlanta, GA 30339

                                        */s/ Tyler B. Kaspers*
                                        Tyler B. Kaspers, Ga. Bar No. 445708
                                        THE KASPERS FIRM, LLC
                                        152 New Street, Suite 109B
                                        Macon, GA  31201
                                        404-944-3128